April 4,
1911.

## BOSTON & MAINE RAILROAD *v.* STATE.

The common-law rules of evidence are to be applied in the trial of a tax appeal before referees appointed under section 9, chapter 227, Public Statutes, unless the parties consent to be governed by some different standard.

On the trial of an appeal from taxes assessed against a railroad company, the members of the state board of equalization cannot be required to testify as to the methods adopted by them in determining the value of the appellants' property.

PETITION, for the revision of rulings of referees. The petitioners' appeal from an assessment of taxes was by agreement sent to referees, who were directed to hear the parties and report

the facts. Soon after the hearings were begun, the petitioners submitted questions to the referees, with a request for rulings thereon. The questions and rulings are in part as follows:

"1. Will the board receive in evidence the testimony of investigators of the statements made to them by taxpayers and their agents as to the value of their property taxable for the year 1909? *Ans.* No, unless the statement is made in the presence of investigators representing both sides and they do not disagree as to its terms. In such case the evidence of the investigators will be received.

"6. Will the referees receive in evidence the testimony of the state board of equalization as to the method adopted by them for determining the value of railroad properties in the state for the purposes of taxation in the year 1909, and the rate of such taxation? *Ans.* No, except so far as to show what elements of value of the railroads are included in their valuation, and to inquire if they excluded the savings bank deposits and tax in fixing the rate.

"10. If declarations of property owners and their agents as to values are obtained by investigators under the promise that they will be given to the referees and opposing counsel only, will such investigators be permitted to testify to those declarations, and the confidence under which they were obtained be respected? *Ans.* If obtained as provided under ruling 1, the referees will receive such testimony, but cannot undertake to limit the publicity of the hearings.

"11. May we introduce first-hand declarations, that is, those made to persons who testify, of vendors and vendees as to the prices received or paid? *Ans.* No, but the referees will receive affidavits of vendors and vendees as to the prices received or paid for property, the affidavits offered by either party to be submitted to the other party for examination ten days at least before they are offered as evidence. The referees must not be understood as ruling that they will receive affidavits generally upon all questions that are in issue; their present ruling is limited to the subject-matter mentioned in the question."

The present petition alleges, in substance, that in consequence of the foregoing rulings the petitioners are unable to use the results of inquiries made by their agents as to sales of real estate and the statements of property owners as to the value of their stocks in trade, made by them to the petitioners' investigators, all of which information was secured at large expense; that the referees

have excluded as hearsay certain testimony as to sales of real estate, based on statements made to the witnesses by the vendors and vendees or their agents, and covering the consideration of sales; and that said rulings are contrary to law and the rules of evidence.

It was further alleged that if the petitioners were required to furnish evidence as to the value of stocks in trade and other taxable property under the restrictions imposed by the rulings of the referees, the expenditure of money and the consumption of time would render the proceeding practically impossible and work a deprivation of the petitioners' right to an abatement of their taxes. The prayer was that the foregoing rulings be modified and the referees be given instructions as to the evidence to be considered by them.

*Branch & Branch* and *Dewitt C. Howe* (*Mr. Howe* and *Oliver W. Branch* orally), for the petitioners.

*Edwin G. Eastman,* attorney-general, and *Albert O. Brown* (*Mr. Brown* orally), for the state.

BINGHAM, J.    October 26, 1909, the petitioners filed their appeal in this court asking for an abatement of their taxes for that year. February 10, 1910, counsel for the respective parties having agreed that the case should be sent to referees, William M. Chase, Edgar W. Smith, and John H. Riedell were appointed by the court to act as such, and a commission was issued to them containing the following directions: "You are hereby appointed referees in the above entitled action. You will be first sworn to the faithful discharge of your duties. As soon as practicable, you will give reasonable notice to the parties of the time and place of hearing. You will, unless the parties otherwise agree, proceed according to the rules of law or equity, as the case may be, and according to the practice in court, and make report of your doings under this commission to said court, stating specifically your rulings upon all questions of law, and stating all matters of fact found proved, if either party shall request. If either party shall neglect or refuse to appear before you, or to produce any books or papers, or to answer on oath any interrogatories relating to the matter in controversy that may be pertinent or material, you will certify the same to the court."

The petitioners presented a series of questions to the referees, asking them to rule upon the admissibility of certain evidence which they proposed to offer in the course of the trial. The referees seasonably submitted their rulings upon the questions, some of which are set out in the petition. Not content with these rulings, the petitioners now make application to the court to revise them, and seek to have the scope of the inquiry enlarged and the limitations placed upon the reception of hearsay testimony extended or altogether dispensed with.

The Public Statutes, chapter 227, provide as follows:

"Sect. 9. The supreme court  .  .  .   with the consent of the parties shall  .  .  .   commit to one or more referees any cause at law or in equity;  .  .  .   and with the consent of the parties shall so commit any other  cause or the determination of any other question of fact.

"Sect. 10.   Referees shall proceed in all cases, unless the parties otherwise agree, according to the rules of law or of equity, as the case may be, and according to the practice in court, and shall report their decision as soon as may be to the court. If either party shall request it, they shall state specifically all matters of fact found by them to have been proved, and their rulings upon all questions of law."

It thus appears that the tax appeal was sent to the referees under the provisions of section 9, chapter 227, of the Public Statutes, and that they were directed in their commission to proceed in accordance with the provisions of section 10 of that chapter. This being so, it matters not whether a tax appeal is a proceeding at law or in equity; for a referee occupies "no such position and sustains no such relation to the court or the cause, as that of a master in chancery appointed to acquire and impart facts for the information of the conscience of the court; but  .  .  .   [sustains] toward the cause, the parties, and the court precisely the position of an arbitrator at common law, with no other restriction of his powers or duties  than the requirement that he proceed according to the rules of [law or] equity [as the case  may be] and the practice in court, and report his decision, stating specifically his rulings upon all questions of law and all matters of fact found proved, if so requested by either party."   *Free* v. *Buckingham,* 59 N. H. 219, 223.

The object of the referee law as enacted in 1876 was, and as now amended (Laws 1901, *c.* 78, *s.* 12) is, to substitute a referee for the court or a jury "in the trial and determination of those

cases in which the parties . . . consent to such reference; . . . to substitute an award for a verdict, and to make it subject to the same rules which govern and control, sustain or set aside, verdicts." *Free* v. *Buckingham, supra,* 224.

In *Mason* v. *Knox,* 66 N. H. 545, hearsay testimony that was material, though incompetent, was admitted in evidence in a trial before referees, subject to exceptions; and it was held that as the reception of such testimony would be cause for setting aside the verdict of a jury, it was cause for setting aside the report of referees. To the same effect see *Smith* v. *Morrill,* 71 N. H. 409.

In *Amoskeag Mfg. Co.* v. *Manchester,* No. 25, Supreme Court Docket, 1902, decided at the March session, 1902, a tax appeal that had been sent to referees to find the facts, the question was as to the admissibility of certain evidence received by the referees subject to exception; and it was there held (*Parsons,* J., delivering the opinion) that "the referees were bound 'to proceed according to the rules of law . . . and according to the practice in court.' P. S., c. 227, s. 10. If the court has power in this class of cases to act upon appraisals made by commissioners who were not bound by the rules of evidence (*Cocheco Mfg. Co.* v. *Strafford,* 51 N. H. 455, 475), a point not considered, this case was not sent to such a tribunal." The opinion then proceeds to consider the admissibility of the evidence and concludes that it was improperly received, and the report of the referees was set aside.

. In *Winnipiseogee etc. Co.* v. *Laconia,* 68 N. H. 284, a tax appeal that was not referred but was tried by the court, the question of the competency and effect of a judgment rendered upon an appeal from a tax assessed upon the same property the preceding year was reserved. It was there assumed that the value of the property was technically in issue on the appeal from the tax of the preceding year; and as that issue was actually tried on that appeal, it was held that the question of value was *res adjudicata,* and that the judgment rendered was conclusive evidence of the value of the property for that year, and not being too remote, was competent evidence of the value of the property the following year. Had the question of value not been, or assumed to be, technically in issue on the prior appeal, or had it not been actually tried, the judgment rendered in that suit would not have been competent evidence of the value of the property on the subsequent appeal, but would have been excluded as mere hearsay. This is just what was decided in *Winnipiseogee etc. Co.* v. *Laconia,* 74 N. H. 82.

These decisions are sufficient to demonstrate that the common-law rules of evidence are applied in tax appeals when tried by the court, and that they must be adhered to in the trial of such causes before referees unless the parties consent to be governed by some different standard. If the parties to the present appeal have agreed to a different standard, the referees will proceed accordingly. If they have not, the trial will be governed by the rules of the common law.

Jurors could not be required to testify to the "motives, inducements, or principles upon which a jury founded or joined in a verdict" (*Walker* v. *Kennison*, 34 N. H. 257; *Knight* v. *Epsom*, 62 N. H. 356, 359), and the members of the board of equalization cannot be inquired of as to the "operation of their minds" in valuing and taxing the petitioners' roads. *Chicago etc. R. R.* v. *Babcock*, 204 U. S. 585; 4 Wig. Ev., s. 2349.

It is probable that the method adopted in presenting the questions here considered is irregular and not to be commended. Ordinarily such questions would come before the court upon the final report of the referees, or, pending the reference, upon a certificate of the referees; but as no objection has been interposed on this account, and as counsel have manifested a desire that the questions should be passed upon, we have considered them.

*Petition dismissed.*

All concurred.